# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | |
|---|---|
| IN RE: ) | CHAPTER 7 PROCEEDING |
| ) | |
| BARRY ELWOOD TUBBS II ) | |
| AMY RAYNELLE TUBBS ) | |
|     DEBTORS. ) | CASE NO. 17-45110- ELM-7 |
| ) | |
| ) | |
| WILLIAM T. NEARY, ) | |
| UNITED STATES TRUSTEE, ) | |
|     PLAINTIFF ) | ADVERSARY NO. |
| ) | |
| V. ) | |
| ) | |
| BARRY ELWOOD TUBBS II ) | |
| AMY RAYNELLE TUBBS ) | |
| ) | |
|     DEFENDANTS. ) | HON. EDWIN MORRIS |
| ) | |

**United States Trustee's Complaint to Revoke Discharge of Joint Debtor
Amy Raynelle Tubbs and Barry Elwood Tubbs II**

TO:   THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

William T. Neary, the United States Trustee for Region 6 ("Plaintiff"), files his complaint seeking an order revoking the discharge of Joint Debtor Amy Raynelle Tubbs and Barry Elwood Tubbs II ("Defendants") under 11 U.S.C. § 727(d). In support, the United States Trustee respectfully shows as follows:

### I.   Jurisdiction

1.   This Court has jurisdiction of this matter under 28 U.S.C. §§ 157, 1334 and 11 U.S.C. §727(d).

2.   This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(J).

3.   The United States Trustee consents to entry of final judgment and judgment by the bankruptcy court. Fed. R. Bankr. P. 7008.

4. Venue is proper with the Bankruptcy Court in accordance with 28 U.S.C. § 1409(a).

## II.    Parties

5. The Plaintiff is William T. Neary, the United States Trustee for Region 6.

6. Plaintiff monitors and supervises the administration of cases commenced under chapters 7, 11, 12, and 13 of the Bankruptcy Code pursuant to 28 U.S.C. § 586(a)(3) and has standing to bring this action pursuant to 11 U.S.C. §§ 307 and 727(d). Plaintiff's principal place of business is at 1100 Commerce St., Room 976, Dallas, Texas 75242 and may be served through undersigned counsel, Nancy Resnick.

7. Defendants and/or "Debtors" are Barry Elwood Tubbs II and Amy Raynelle Tubbs, who at the time of filing a joint chapter 7 in the United States Bankruptcy Court for the Northern District of Texas were husband and wife.

8. Defendant Barry Elwood Tubbs II currently resides at 441 Running Water Trail, Fort Worth, Texas 76131.

9. Defendant Amy Raynelle Tubbs currently resides at 2111 Wood Duck Lane, Granbury, Texas 76049.

## III.    United States Trustee's Stipulation with Defendants waiving right to raise the one year time limit under 11 U.S.C. § 727(e) as an affirmative defense

10. Defendants filed a joint voluntary chapter 7 bankruptcy petition on December 19, 2017, commencing Case No. 17-45110-ELM-7 in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division. *(Docket no. 1)*

11. The current case is the second time Defendants have sought bankruptcy protection. Defendants filed a prior chapter 7 case in 2002 in the Eastern District of Arkansas, case no. 02-bk-23527 and received a chapter 7 discharge on March 21, 2003.

12. Eric Maskell is the attorney of record for Defendants.

13. On May 1, 2018, Defendants received their chapter 7 discharge. *(Docket no. 19)*

14. On May 1, 2018, the case was closed. *(Docket no. 20)*

15. After the discharge order was entered and after the case was closed, the United States Trustee first was informed of facts that might possibly lead to the filing of a complaint supporting the revocation of Defendants' discharge.

16. Because Defendants received a chapter 7 discharge on May 1, 2018, the deadline for any party to file a complaint seeking revocation of discharge was May 1, 2019. *See* 11 U.SC. § 727(e).

17. On April 8, 2019, the United States Trustee filed an Unopposed Motion to Reopen Case under 11 U.S.C. §350. *(Docket no. 24)*

18. On April 11, 2019, an Order Granting Motion to Reopen case was entered. *(Docket no. 25)*

19. To avoid a premature filing of a complaint seeking revocation of Debtor's discharge without sufficient discovery, and because there was less than 30 days between the time the case was reopened and the deadline to file a complaint seeking revocation of discharge, the Debtors agreed that if the United States Trustee files a complaint seeking relief under 11 U.S.C. § 727(d) on or before July 1, 2019, that Debtors waived the right to raise the one year time limit under 11 U.S.C. § 727(e) as an affirmative defense.

20. This agreement was memorialized in the Stipulation Concerning Time for the United States Trustee to File Complaint Seeking Revocation of Discharge under 11 U.S.C. §727(d) to File Complaint. *(Docket no. 23)*.

### IV. FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

**Bankruptcy – Schedules and Statement of Financial Affairs**

21. Defendants filed Schedules and Statement of Financial Affairs ("SOFA") with their petition. *(Docket no. 1)*

22. Defendant averred on Schedule A/B they had two checking accounts at First Financial at the time of filing, with an aggregate balance of $300.00.

23. Defendants checked "no" in response to SOFA Question 20 regarding any bank accounts closed within the past year.

24. In response to SOFA Question 21 regarding transfers outside the ordinary course, Defendants disclosed one transfer in August 2017, regarding the sale of their prior residence.

25. Defendants listed no executory contracts or leases on Schedule G.

26. On Schedule I, Defendant Barry Tubbs described his employment as "Pastor" with The Way Church, and averred he has been employed with The Way Church for eight years.

27. On Schedule I, Defendant Amy Tubbs described her employment as "Worship/Womens Pastor/Contract", and averred she has been employed at the Way Church for eight years.

28. On Schedule I, Defendant Barry Tubbs averred his gross monthly income was $3,453.67

29. On Schedule I, Defendant Amy Tubbs averred her gross monthly income was $2,205.67.

30. Together, Defendants averred to total monthly gross income of $5,659.34 on Schedule I.

31. On Schedule I, Defendants checked "no" in response to any expectation of an increase or decrease in their monthly income within the year after filing the form.

32. On Schedule J, Defendants averred their monthly expenses totaled $5,590.00 leaving net disposable income of $69.34.

33. Defendant's expenses as disclosed on Schedule J do not include rent.

34. On Schedule J Defendants checked "no" in response to any expectation of an increase or decrease in their expenses within the year after filing the form.

35. On SOFA Question 4, Defendants averred that Barry Tubbs had gross income of $15,377 for 2016 and $15,507.00 for 2015.

36. SOFA Question 4 does not list any gross income for Defendant Amy Tubbs for 2015 and 2016.

37.     SOFA Question 5 which requires disclosure of any other income during the current year and the two previous years, regardless of whether that income is taxable, lists royalty income of $3,223.00 for 2015.

38.     Other than the 2015 royalty income, Defendants averred, in response to SOFA Question 5 they received no other income for 2017, 2016 and 2015.

39.     Defendants averred they have $149,809.00 in secured debt, no unsecured priority claims, and $149,809.00 in general unsecured claims.

**§ 341 meeting of creditors**

40.     Shawn Brown was appointed the chapter 7 trustee ("Trustee") in this case.

41.     The §341 meeting of creditors was held and concluded by the Trustee on January 23, 2018.

42.     Defendants appeared and testified under oath at the § 341 meeting.

43.     At the § 341 meeting, Defendants were asked by the Trustee and their own counsel if there were any changes or corrections to be made to the Schedules and SOFA, to which Defendants testified "no".

44.      Defendants failed to list any income amount for the year 2017 on SOFA Question 1.

45.     The Trustee requested Defendants amend the SOFA to disclose their 2017 income.

46.     The SOFA was not amended.

47.     The Trustee filed a report of no distribution on January 23, 2018.

**2004 Examination**

48.     The United States Trustee filed an Agreed Motion for Rule 2004 Examination of Defendants on April 15, 2018.  *(Docket no. 27)*

49.     An Agreed Order granting motion for 2004 examination was entered on April 23, 2019. *(Docket no. 28)*

50. In anticipation of the examination, the United States Trustee issued formal written discovery and requested various financial documents.

51. Defendants timely complied with the discovery request.

52. Defendants provided the United States Trustee with numerous documents including but not limited to bank statements for Defendants, bank statements for The Way Church, contracts, and tax returns.

53. The 2004 examination for the Defendants was held on May 22, 2019.

**Bank Accounts and Income**

54. The 2004 examination revealed that in the weeks before filing bankruptcy Defendants closed four BBVA bank accounts. The bank accounts are identified as xxxx7405, xxxx3309, xxxx8333, and xxxx8501.

55. The BBVA bank statements show Defendants received more income than what was disclosed on the SOFA and Schedule of Income.

56. BBVA account ending in xxxx 8501 had monthly deposits from between approximately $6,500 and $24,000 during the period of May to December 2017.

57. The 2004 examination further revealed Defendants received additional income described as "clergy housing".

58. Defendant's joint 2017 tax return revealed additional annual income of $28,098.77 for "clergy housing".

59. At the 2004 Defendants were asked whether received income from the Way Church in addition to the disclosed wages/ income on Schedule I and J. Defendants testified to using the tithe account for their personal expenses. *(Examination Transcript at pp 90-91)* The personal expenses included but were not limited to 1) $545 in October and September 2017 for a Maui vacation; 2) tanning salon charges; 3) nail salon charges; 4) a $1300 Louis Vuitton purse purchased as a gift;

and 5) payments on one or more of the Tubbs credit cards – American Express, Citi, Aloca Community Credit Union.

**Transfers**

60. At the 2004 examination, Defendant Barry Tubbs testified that in May 2017, he sold a truck and received about $8,000 from the sale. *(Examination Transcript at pg. 98)*

61. An online deposit of $8,463 was made into Barry Tubbs BBVA account on May 8, 2017.

62. The sale of the truck was not disclosed in response to SOFA Question 3.

63. The funds received from the sale of the truck were not disclosed in response to SOFA Question 2.

**Housing**

64. Defendants testified that when they appeared at the §341 meeting on January 23, 2018, they were no longer living at The Way Church, and had already moved into a home located at 8801 Godley Road Granbury, Texas. *(Examination Transcript at pg.45)*

65. The monthly rent on the Godley residence was $3,000.00.

66. Defendants acknowledged the Godley Road lease was signed by Defendants and is dated December 16, 2017, just three days before filing.

67. Schedules I and J do not include the rent as an actual or projected expense.

68. Schedule G does not list any executory contracts.

69. According to the information as disclosed on Schedules I and J, Defendants were not anticipating any increase in either income or expenses and had net disposable of income of $69.14 while living rent free at the church.

70. Yet, Defendants committed themselves to a $3,000.00 monthly housing rental expense.

## **COUNT I – 11 U.S.C. §727 (d)(1)**

### **Defendants acted fraudulently by failing to disclose four bank accounts closed within the year before filing**

71. Plaintiff re-alleges and incorporates the allegations contained in paragraph 1 through 69.

72. A debtor is obligated to give a full and accurate picture of his or her financial situation. 11 U.S.C. §§ 521(a)(1)(B). Debtors who fail to provide complete information about their financial circumstances, or testify untruthfully about their affairs, can be denied a discharge of their debts. *See generally* 11 U.S.C. § 727(a).

73. A granted discharge may also be revoked. On the request of the United States Trustee or other party in interest, the bankruptcy court "shall revoke a discharge" where "such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge." 11 U.S.C. § 727(d)(1).

74. The Fifth Circuit has held that "false oaths sufficient to justify the denial of discharge include (1) a false statement or omission in the debtor's schedules or (2) a false statement by the debtor at the examination during the course of the proceedings." *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir. 1992) (quotation marks and citation omitted). Reckless indifference to the truth" may also constitute fraudulent intent. *See Beauboeff*, 966 F.2d at 178. "

75. "Fraudulent intent may be proved by showing either actual intent to deceive or a reckless indifference for the truth." *Neary v. Hughes (In re Hughes),* 353 B.R. 486, 504 (Bankr. N.D.Tex. 2006); *see also, Sholdra v. Chilmark Fin., LLP (In re Sholdra),* 249F.3d 380, 382–83 (5th Cir.2001)

76. At the meeting of creditors, and 2004 exam Defendants testified under oath they reviewed the Schedules and SOFA, testifying they understood them to be true and accurate. Notwithstanding such

affirmance, Defendants failed to disclose the most basic of disclosures – four bank accounts – actively used up until December 2017.

77. The complete nondisclosure of four bank accounts is a material false oath that displays a reckless disregard for the truth. The non-disclosure is material as it influences Debtors' true financial status relating to income, expenses and assets. An omission is material "if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Beaubouef v. Beaubouef (In re Beaubouef),* 966 F.2d 174, 178 (5th Cir.1992). A finding of materiality is not dependent upon the value of the omitted assets or whether the omission was detrimental to creditors. *Cadle Co. v. Pratt (In re Pratt),* 411 F.3d 561, 566 (5th Cir.2005); *In re Darby,* 376 B.R. 534 (Bankr. ED Tex. 2007)

78. Creditors should not be required to speculate about the financial condition of the debtor. "[S]chedules serve the important purpose of insuring that adequate information is available for the Trustee and creditors without need for investigation to determine whether the information provided is true." *See Pratt, 411 F.3d at 566* (internal quotations omitted)

**Defendants acted fraudulently by failing to executory contracts and transfers**

79. Because "bankruptcy schedules serve the important purpose of insuring that adequate information is available for the Trustee and creditors without need for investigation to determine whether the information provided is true, full disclosure is required to be filed by those seeking bankruptcy relief." *Beaubouef v. Beaubouef (In re Beaubouef),* 966 F.2d 174, 179 (5th Cir.1992).

80. The undisclosed transfer and executory contract bear a material relation to Defendants' income and expenses. The Defendants claimed barely $70 in disposable income, yet they committed themselves to a $3,000 monthly lease and had additional undisclosed funds within months before the filing of bankruptcy.

81. Fraudulent intent is "generally proven by circumstantial evidence or inferences drawn from circumstances surrounding the debtor." *Phillips v. Epic Aviation (In re Phillips)*, 476 Fed. Appx. 813, 816 n.1 (11th Cir. 2012)

82. This case does not involve an isolated false statement or omission. Defendants' failure to disclose:

    (A) Four bank accounts;

    (B) A residential lease – executed contemporaneously with the filing – requiring them to pay $3,000 per month, an unsupportable amount if their means test and schedule of income contained correct attestations;

    (C) Transfers outside the ordinary course of business such as the sale of a truck; and

    (D) Non-disclosure of income received from a tithing account demonstrate fraudulent intent.

83. A material fraud, which would have resulted in the denial of a Chapter 7 discharge had it been known at the time of such discharge, can justify subsequent revocation of that discharge. *Jones v. U.S. Trustee,* 736 F.3rd 897 (9th Circ. 2013) "Debtors must accept responsibility for any deficiencies in their schedules. *Lubeck v. Littlefield's Restaurant Corp. (In re Fauchier),* 71 B.R. 212 (Bankr. 9th Cir.1987). Candor, accuracy and integrity are required of a debtor in bankruptcy. *Govaert v. Topper (In re Topper),* 85 B.R. 167, 170 (Bankr.S.D.Fla.1988)." *In re Bennett,* 126 B.R. 869, 875-876 (Bankr. N.D, TX. 1991)

Accordingly the Defendants' discharge should be revoked.

WHEREFORE, the United States Trustee respectfully asks the Court to revoke the discharge of Defendant Barry Elwood Tubbs II and Amy Raynelle Tubbs pursuant to 11 U.S.C. §727(d)(1)

DATED: June 21, 2018                                          Respectfully submitted,

        WILLIAM T. NEARY
        UNITED STATES TRUSTEE
        <u>/s/ Nancy Sue Resnick</u>
        Nancy Sue Resnick
        Trial Attorney
        Office of the United States Trustee
        1100 Commerce Street, Room 976
        Dallas, Texas 75242
        (214) 767-1088